[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff brought this motion to modify custody together with an application for a post-judgment ex parte restraining order. A hearing was held by the court on January 11, 1999 when CT Page 171 the defendant appeared and contested the issues pro se.
Pursuant to the dissolution judgment of September 18, 1989, the parties share joint custody of the minor children, Joshua, born October 17, 1984, Justin, born October 31, 1985 and Kyle, born November 18, 1987. The children reside with the plaintiff mother, as agreed to by the parties in their separation agreement, and the defendant father has reasonable, flexible and liberal visitation rights which include overnight visitation. Since the dissolution, the defendant has moved to Florida where he has a home, a business and another child with whose mother he lives. The three children of this marriage have visited him for approximately five weeks in the summer since his move, and have visited with him on any visits he has made to Connecticut. The father returns the children by August 1 so that they can begin football practice. In the summer of 1998 he saw the two younger children in Connecticut at his brother's home because he was visiting family members in the state. The older child, Joshua, had telephone contact with him but did not see him. However, he has visited him in February for two weeks.
The plaintiff is now married to Jerry Burr and has a three year old child of this marriage. She brought this motion requesting that she have sole custody for one year and that the defendant have supervised visitation. This request has been precipitated by the defendant's belief that the year 2000 will cause many problems. This belief surfaced in August, after he had seen the children, when he met with a computer technician who told him the various problems that could occur with computers on January 1, 2000. The defendant began collecting and reading literature with regard to the approach of the millennium. This reading confirmed for him that it was necessary to stock up on provisions, and provide for the possible takeover of one's realty and property by the government, for the closure of roads by the government, and for the declaration of martial law. To that end he has purchased three more guns to add to the 12 gauge shotgun he owned. He has purchased a 9 millimeter rifle, for hunting, a 9 millimeter handgun for safety and another gun for the safety of his girlfriend. He believes that these weapons will be necessary to provide for food, as well as protect his family against government forces. He testified that he plans to survive and that he will resist if the government takes supplies he considers necessary for the survival of himself and his family. To that end he has built an addition to his home where he has installed a wood-burning stove and solar panels. He also has supplies for CT Page 172 nine people to survive for one year. He has an 80-foot well with a filter system as well as medical supplies. He has invited all of Mrs. Burr's family as well as other members of his family to join him. He has also constructed "Mad Max" vehicle adapted for off-road travel. In order to convince the plaintiff of his concerns, he sent her a video in which he spoke of his beliefs and his preparations and advised her not to show it to the children. Alarmed, she filed the instant motion.
Campbell concedes that Mrs. Burr has much of what he has: she is surrounded by family members; she has a wood-burning stove, private septic system, and has accumulated canned goods. Her husband is a helicopter repairman and a hydraulic specialist. He has mechanical aptitudes and is confident he could provide for the family in the event the occurrences which Campbell predicts come to pass. Campbell believes that his home is better for the children because Florida has a year-round growing season which could provide food.
The plaintiff does not wish to send the children to Florida until well after January 1, 2000. Campbell, himself is unable to give a date that would cause these disruptions to begin or occur. He claims that "9/9/99" is a troublesome date; he cannot, however, specify a date on which problems could begin and they could begin well before August 1. He would, therefore, not return the children to their mother after their July visitation because the dangerous period could be in effect and he believes that were he not to keep the children, roads would be closed and he would not be able to get them. He would, however, return them to her after the "problem" has passed.
The plaintiff is concerned that, given Campbell's beliefs, her children would be caught in a gun battle if Campbell felt the need to protect his property. She is also concerned that Justin, who exhibits oppositional behavior and is diagnosed as having Attention Deficit Disorder, would suffer setbacks by a transfer to another school in Florida. He is the recipient of many educational and social services at his present school where he has built a rapport with his resource teacher in special education. The defendant claims that the child inherited Attention Deficit Disorder from him and that he is better able to cope with the child's behavior because he knows the problems first-hand.
The court finds that the defendant has the safety of his CT Page 173 children at heart. The court, however, finds that the plaintiff's fears are not unfounded regarding Campbell's possible response to government intervention. It is unclear from his testimony exactly what would constitute government intervention such that the defendant would believe he had to respond with gunfire. The court also finds that it would not be in Justin's best interests to remain with his father and transfer to a school in Florida.
For the foregoing reasons, the court grants the motion to modify custody. The plaintiff shall have sole custody of the minor children until further order of the court. The defendant shall have reasonable, liberal and flexible rights of supervised visitation, excluding overnight visitation, with the children in the state of Connecticut. He may not remove them from the state of Connecticut. It is anticipated that the custody and visitation issues can be more favorably resolved for the defendant at some point in the year 2000.
SANDRA VILARDI LEHENY, J.